**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SARAH KUNETZ, | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:25-cv-00772 (JCH) |
| | : | |
| v. | : | |
| | : | |
| U.S. CHEMICALS, LLC, CAROL | : | |
| PICARRO and ERIN CARR | : | NOVEMBER 24, 2025 |
|     Defendant. | : | |

**RULING ON DEFENDANTS' PARTIAL MOTION TO DISMISS (DOC. NO. 14)[1]**

**I.   INTRODUCTION**

The plaintiff, Ms. Sarah Kunetz, brings this suit against the defendants, U.S. Chemicals, LLC ("U.S. Chemicals"); Carol Picarro ("Picarro")[2]; and Erin Carr ("Carr"), alleging violations of the Federal Age Discrimination in Employment Act ("ADEA"), the Fair Labor Standards Act ("FLSA"), and the Connecticut Fair Employment Practices Act ("CFEPA").  See Complaint (Doc. No. 1).  U.S. Chemicals moves to dismiss Counts One, Two, and Five; while defendants Ms. Picarro and Ms. Carr move to dismiss all Counts directed at them in an individual capacity.  See Defendants Motion to Dismiss ("Mot. Dismiss") (Doc. No. 14).  Ms. Kunetz opposes the Motion.  See Sarah Kunetz's Memorandum of Law in Opposition to the Defendants' Partial Motion to Dismiss ("Pltf's Opp'n") (Doc. No. 16).  The Defendants responded to the Opposition.  See Defendants Reply to Plaintiff's Objection to Defendants' Motion to Dismiss ("Def's. Reply") (Doc. No. 17).

---

[1] The court construes the Motion as a Partial Motion to Dismiss, as the defendants have not moved to dismiss Counts Three or Four against U.S. Chemicals.  See infra at 10.

[2] The parties use different spelling of the name "Picarro," so for the purposes of this Ruling, the court adopts the plaintiff's spelling in the Complaint.  See Complaint (Doc. No. 1.).

1

For the reasons stated below, the court grants the Motion to Dismiss for Counts Three and Four as to Ms. Picarro and Ms. Carr individually.  The court denies the Motion to Dismiss for Count One, Count Two, and Count Five as to U.S. Chemicals.

## II.    BACKGROUND

U.S. Chemicals hired Ms. Kunetz as an accounts payable/receivable employee in or about October 2011.  See Complaint at ¶ 20.  Ms. Kunetz was required to sign an NDA as a condition of her employment; the NDA expressly defined U.S. Chemicals to include all affiliates.  Id.  Ms. Kunetz was recognized for her job performance, and she was awarded salary increases, bonuses, and a promotion to Finance Specialist in March 2014.  Id. at ¶ 21. During her employment, no supervisor or manager disciplined or expressed doubts of Ms. Kunetz's ability or work performance. Id. at  ¶ 22.  Around May 2016, Maroon acquired U.S. Chemicals and exercised significant control over the day-to-day labor and employment relations of employees of U.S. Chemicals.  Id. at ¶ 23.  Maroon assigned work specifically to Ms. Kunetz and directed day-to-day assignments.  Id.  Between May 2017 and October 2017, both Maroon and U.S. Chemicals treated Ms. Kunetz as an employee of both companies and maintained common control over her terms and conditions of employment.  Id.

Between May 2016 and October 2017, Maroon paid for Ms. Kunetz's services directly, even though she remained employed by U.S. Chemicals and never applied for any position with Maroon and was never hired by Maroon; however, she performed work for both companies.  Id. at ¶ 24.  In October 2017, Maroon presented Ms. Kunetz with a separation agreement and general release purportedly terminating her employment and paying her more than $8,000 in return for a waiver and release of claims.  Id. at ¶ 25.  Between October 2017 and January 2018, Ms. Kunetz performed

services at U.S. Chemicals even though she had been "separated" by Maroon. Id. at ¶ 26. U.S. Chemicals, in January 2018, required Ms. Kunetz to complete new hire paperwork; however, Ms. Kunetz continued to perform the same services for U.S. Chemicals she had been performing since 2011. Id. at ¶ 27. Ms. Kunetz alleges her job did not change in any significant manner, but that the supposed separation and hiring was part of a sham to disguise the co-employment and single employer nature of her employment. Id. at ¶ 28.

Around January 2022, U.S. Chemicals informed Ms. Kunetz it was converting her from an exempt salaried employee to an hourly employee. Id. at ¶ 29. Ms. Kunetz was informed the reason for the change was to provide her with the ability to take more time off if she so desired. Id. Ms. Kunetz did not object because this change did not result in a pay deduction. Id. Now as an hourly worker, U.S. Chemicals was required under FLSA and Connecticut law to track and pay Ms. Kunetz for all hours worked based on her regular rate of pay. Id. at ¶ 30. Ms. Kunetz alleges that U.S. Chemicals failed and refused to pay her for all the hours worked. Id. Ms. Kunetz alleges multiple times she was required to attend functions and events for which she was not properly compensated. Id. Some of these include a May 2023 suppliers conference, a July 2023 client golf outing, and multiple dinners or events throughout 2022−2023. Id. at ¶ 30(a−d). During one event in 2023, Ms. Kunetz was scheduled to attend a dinner with Michele Picarro, daughter of defendant Ms. Picarro, but Ms. Kunetz was informed that her attendance was not required, and she would not be compensated for her time. Id. at ¶ 30(c). Therefore, Ms. Kunetz did not attend, but was later chastised by defendants

Ms. Carr and Ms. Picarro, which led Ms. Kunetz to believe extra work was uncompensated and a term of her continued employment.  Id.

While Ms. Kunetz was required to submit weekly time records, she alleges the defendants did not pay her timely for all her hours worked.  U.S. Chemicals adopted a practice called "retroactive pay."  Id. at ¶ 31.  Ms. Kunetz was "compensated for her hours she had worked during the pay period, and which were not included in her paycheck."  Id.  Ms. Kunetz alleges that, "in 2023, not a single paycheck issued [to her] reflected all the hours worked during the payroll period," a practice which Ms. Kunetz alleges violates the 8-day rule of C.G.S. section 31-71b(b).  Id.

In the fall of 2023, Ms. Kunetz was the oldest employee working for U.S. Chemicals.  Id. at ¶ 32.  Around November 2023, Ms. Picarro emailed Ms. Kunetz regarding the upcoming year and asked about her long-term goals.  Id. at ¶ 33.  Ms. Kunetz did not plan to retire in the near future and replied that she planned to work for U.S. Chemicals "indefinitely."  Id.  Ms. Kunetz alleges that, during a meeting regarding the email, she again expressed the desire to continue to work for U.S. Chemicals indefinitely.  In response, Ms. Picarro, through body language and facial expression, expressed displeasure.  Id. at ¶ 34.  The meeting ended shortly after this disclosure without further discussion.  Id.  On December 28, 2023, Ms. Kunetz turned 66, and Ms. Picarro baked a birthday cake, and the defendants recognized Ms. Kunetz's birthday with a celebration – an event which Ms. Kunetz alleges provided actual knowledge to employees and supervisors that she was eligible for Social Security retirement.  Id.

On January 4, 2024, Ms. Kunetz was called into a meeting with Ms. Carr and Ms. Picarro and advised that U.S. Chemicals was separating her from the company due to a

4

"restructuring" of the Finance Department: so her job had been eliminated. Id. at ¶ 36. Ms. Kunetz alleges that U.S. Chemicals' claim of the Finance Department restructuring was false and presented to disguise the true reason for Ms. Kunetz's termination. Id. at ¶ 37. The same day, Ms. Picarro phoned Ms. Kunetz to thank her for her service and write a letter of recommendation based on her work history "if she ever wanted to work again." Id. Ms. Kunetz alleges that this phone call confirmed that Ms. Kunetz's work performance played no role in the decision to discharge her. Id. at ¶ 38. Further, the call allegedly revealed Ms. Picarro's age-based animus by showing her view that Ms. Kunetz might not want to continue to work even after being informed directly of Ms. Kunetz's intent to work indefinitely. Id. at ¶ 38.

Within a short period of time following Ms. Kunetz's separation, U.S. Chemicals advertised a newly created assistant controller position, for which Ms. Kunetz was not given the opportunity to apply for. Id. at ¶ 39. Ms. Kunetz alleges she met the requirements of the new position. Id.

In CHRO filings, U.S. Chemicals took the position it discharged Ms. Kunetz due to work performance issues. Id. at ¶ 40. These issues were never raised with Ms. Kunetz during her employment. Id. It is also counter to the claims told to Ms. Kunetz that her job was terminated due to restructurings and that Ms. Picarro would write a recommendation based on Ms. Kunetz's work performance. Id.

Ms. Kunetz alleged that U.S. Chemicals' claim that she was terminated based on work performance is a sham and created to hide age-based animus. Id. at ¶ 42. In Ms. Kunetz's view these contradictory and conflicting reasons can provide support for unlawful age discrimination. Id.

## III. LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the claims, accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the nonmovant's favor.  See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020).  However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.  In deciding a motion to dismiss under Rule 12(b)(6), a complaint is deemed to include writings and documents attached to the complaint, referenced in the complaint, or integral to the complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

## IV. DISCUSSION

### A. Counts One, Two, and Five are Not Time-Barred

All defendants move to dismiss Counts One and Two; Ms. Picarro and Ms. Carr move to dismiss Count Five.  Ms. Kunetz opposes this.  Ms. Kunetz alleges multiple acts of unpaid compensation in her Complaint filed on May 12, 2025.  See Complaint.

6

She further alleges that the wage and hours violations were willful and thus allowed under the three-year statute of limitations. Id. at ¶ 60. Ms. Kunetz references specific events such as a golf outing and conference which occurred in May and July of 2023. Id. at   ¶ 30. These are within the two-year statute of limitations and thus timely.

Ms. Kunetz alleges that the defendants' wage and hour violations were willful. Id. at ¶ 60; see also Pltf's Reply at 8. The Complaint alleges that Ms. Carr reduced the hours submitted and refused to allow a full submission of Ms. Kunetz's hours. See Complaint at ¶ 30. Additionally, Ms. Kunetz alleges that the defendants had a policy of not paying for all hours worked, called "retroactive pay." These well-pleaded factual allegations are presumed true at this stage in litigation and, as such, support a willful violation of the FLSA.

The FLSA provides a two-year statute of limitations unless the violations are "willful" in which a three-year statute of limitations apply. 29 U.S.C. section 255(a). A violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act. See Brock v. Superior Care, Inc., 840 F.2d 1054, 1062 (2d Cir. 1988).

Willfulness under 255(a) of title 29 of the U.S. Code extends the FLSA statute of limitations to three years. Therefore, all actions within the three-year period, May 13, 2022, to May 13, 2025, are timely.

    B.    <u>Count One: Failure to Pay Wages under 29 U.S.C § 207(a)</u>

Ms. Kunetz alleges that the defendants failed to pay her regular wages for all hours worked in violation of 29 U.S.C. section 207(a).[3] See Complaint at ¶ 40. The

---

[3] In Ms. Kunetz's Opposition she claims there was a "scrivener's error," and that the violation cited should be section 206. See Pltf's Opp'n at 4.

7

defendants point out that 29 U.S.C. section 207(a) provides that a workweek should not extend more than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.  Mot. Dismiss at 7.

Ms. Kunetz refers often to attending dinner or other events without compensation.  See Complaint at ¶ 30.  There were weeks identified in the Complaint where Ms. Kunetz was required to work and was not paid for the hours worked.  Id.  Ms. Kunetz alleges that there were times the defendants reduced the hours Ms. Kunetz recorded as having worked, and that she was criticized for having "bailed" on an "optional" dinner.  Id.

In evaluating the plausibility of a plaintiff's claims, the court is limited to the facts stated in a complaint, documents attached as exhibits, or those incorporated by reference.  See Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).  A complaint cannot be cured by a memorandum of law in opposition to a motion to dismiss.  See Natale v. Town of Darien, 1998 U.S. Dist. LEXIS 2356, No. Civ. 3:97cv583 (AHN), 1998 WL 91073 at *4, n.2 (D. Conn. 1998) (plaintiff may not amend complaint in a memorandum of law) (citing Daury v. Smith, 842 F.2d 9, 15−16 (1st Cir. 1988)); see also Hartford Fire Ins. Co. v. Federated Dep't Stores, Inc., 723 F. Supp. 976, 987 (S.D.N.Y. 1989).

The court must examine only the plaintiff's Complaint.  In her Complaint, Ms. Kunetz alleges a violation of section 207(a).  See Complaint at ¶ 40.  While a plaintiff cannot amend her Complaint in response to a motion to dismiss, Town of Darien at *4, Ms. Kunetz's argument has not changed, nor is she amending her Complaint and

advancing a new argument. See Palm Beach Mar. Museum, Inc. v. Hapoalim Sec. USA, Inc., 810 Fed. Appx. 17, 20 (2d. Cir. 2020) (holding a party may not amend its complaint by advancing a new theory of liability for the first time in its opposition to a motion to dismiss), citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998). In the First Cause of Action, Ms. Kunetz alleges a claim that, for "all hours worked . . . [d]efendants failed to pay Ms. Kunetz her regular wages." See Complaint at ¶ 44. Ms. Kunetz's claim is that she has not been paid for her hours worked, which is a section 206 claim, not a claim for overtime under section 207. Nowhere in the Complaint does the word "overtime" appear. See Pltf's Opp'n at 4.

      The FLSA requires employers to "pay to each of his employees . . . who in any workweek is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage." See Rosenbaum v. Meir, 658 F. Supp. 3d 140, 147 (E.D.N.Y. 2023), citing Rogers v. City of Troy, N.Y., 148 F.3d 52, 58 (2d Cir. 1998). The Act does not specify when wages must be paid, but courts have interpreted the FLSA to include a prompt payment requirement. Id., citing Rogers v. City of Troy, N.Y., 148 F.3d 52, at 55. Late wages are considered a form of unpaid wages under the statute. Id., citing Rogers v. City of Troy, N.Y., 148 F.3d 52, at 58. To allege a claim under the FLSA, a plaintiff must show: (1) the defendant is an enterprise engaged in commerce or in the production of goods for commerce; (2) the plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship does not fall within an exception to the FLSA. See Rosenbaum v. Meir, 658 F. Supp. 3d 140 at 146.

      Ms. Kunetz adequately alleges that (1) the defendant, U.S. Chemicals, is a company engaged in commerce, see Complaint at ¶ 3; (2) that she is an "employee"

9

within the meaning of the FLSA, see Complaint at ¶ 20; (3) and there is not an exception under the FLSA to their relationship, see Complaint at ¶¶ 7, 19, 30.  The defendants do not dispute any of these claims.[4]  See generally Mot. to Dismiss.  The defendants dispute that they failed to pay her wages as required under the FLSA.  See Mot. to Dismiss at 4−8.  Ms. Kunetz alleges that the defendants missed payments, reduced her hours, and engaged in a practice of failing to pay her wages timely on multiple occasions, all of which allegations support her claim that the defendants failed to pay her wages in accordance with the FLSA.  See Pltf's Opp'n at 5.  These are well pleaded allegations.  See Complaint at ¶¶ 30, 31

Because Ms. Kunetz's claim provides sufficient facial plausibility to meet the standard under the FLSA, the Motion to Dismiss is denied as to Count One.

### C. Count Two: Failure to Pay Wages under C.G.S. Section 31-71

Ms. Kunetz alleges that she was required to submit weekly time records reflecting her hours worked, yet the defendants regularly and consistently failed to pay her for all her hours worked.  See Complaint at ¶ 31.  She further alleges that the defendants adopted a practice called "retroactive pay" in which Ms. Kunetz was paid for hours worked during the pay period which were not included in her paycheck.  Id.  She alleged not a single paycheck in 2023 reflected the accurate hours worked during the correct payroll period.  Id.

Connecticut law provides that, employers "shall pay weekly, or once every two weeks, all wages, salary . . . due each employee.  C.G.S. section 31-71b(a)(1).

---

[4] Later, in connection with Count 5 against Ms. Carr and Ms. Picarro, these dual defendants argue that they are not "employers" of Ms. Kunetz as that word is defined under the Connecticut Wage law.  See Mot. to Dismiss at 9−10.

10

Subsection (b) elaborates that the "end of the pay period for which payment is made on a regular pay day shall be not more than eight days before such regular pay day, provided, if such regular pay day falls on a nonwork day, payment shall be made on the preceding work day."  C.G.S. section 31-71b(b).  Section 31-71c(b) provides that, when "an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day next succeeding the date of such discharge."

The defendants argue that Ms. Kunetz fails to meet the definition of "wages" and fails to allege, both temporally and event specific, when an "employer" is required to pay such wages.  See Mot. to Dismiss at 10.  Under Connecticut law, an individual who works for the company being sued by an employee can also be the "employer" for the purposes of the Connecticut Wage Statute.  See Butler ex rel. Skidmore v. Hartford Tech. Inst., 243 Conn. 454 (1997) (individual corporate officers can be held liable for unpaid wages and overtime).

Ms. Kunetz details descriptive statements about both the so-called "retroactive pay" and not a single correct paycheck over the entire 2023 year.  See Complaint at ¶ 31.  Additionally, she alleges a failure to pay all wages due upon termination.  Id. at ¶ 50.  The plain language of section 31-71c requires payment of "wages in full," and relevant case law supports allegations of unpaid wages under section 31-71b and 31-71c as sufficient to state a cause of action for failure to pay wages earned, and therefore, to support entitlement to damages under section 31-72.
See Delaney v. Ansonia Board of Education, Superior Court, Judicial District of Ansonia-Milford, Docket No. CV-04-4000219-S (June 14, 2006).

Because Ms. Kunetz's claim alleges sufficiently plausible facts to satisfy the Rule 12(b)(6) standard, the Motion to Dismiss is denied as to Count Two.

D. Count Three: Age Discrimination under ADEA

Ms. Kunetz does not object to dismissal of any ADEA claim as to Ms. Picarro and Ms. Carr, given the Count is allegedly against U.S. Chemicals. See Pltf's Opp'n at 1−2, n.1; see also Complaint at ¶ 53. Therefore, this court grants the Motion to Dismiss Count Three as to defendants Ms. Picarro and Ms. Carr individually.

E. Count Four: Discrimination under the CFEPA

Ms. Kunetz does not object to dismissal of any CFEPA claim against Ms. Picarro and Ms. Carr, given the Count is allegedly against U.S. Chemicals. See Pltf's Opp'n at 1−2, n.1; see also Complaint at ¶ 15  Therefore, this courts grants the Motion to Dismiss Count Four as to defendants Ms. Picarro and Ms. Carr individually.

F. Count Five: Individual Liability for Failure to Pay Wages

The Second Circuit has defined individual liability in the context of FLSA cases and "held that a corporate officer with operational control who is directly responsible for a failure to pay statutorily required wages is an 'employer' along with the corporation, jointly and severally liable for the shortfall." See Irizarry v. Catsimatidis, 722 F.3d 99, 108, n5 (2d Cir. 2013). The Circuit further expounds that "to be an 'employer,' an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment." Id. at 109. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." Id. at 110.

Under Connecticut wage law, individual officers may be liable as an employer, notwithstanding that the corporation is also an employer, if the individual has the responsible authority to set hours and pay wages.  See Butler v. Hartford Tech. Inst., Inc., 243 Conn. 454, 458 (1997).

Here, Ms. Kunetz alleges that the defendants Ms. Picarro and Ms. Carr served as her supervisors who had direct control over wage and hour practices, including payroll and hours adjustments and developing a retroactive pay schedule.  See Complaint at ¶¶ 30, 31.  Ms. Kunetz alleges that although she was required to submit weekly time records, the defendants regularly failed to pay her for all hours worked.  See Complaint ¶ 31. She further claims the defendants used a "retroactive pay" practice in which hours worked during a given pay period were not included in the corresponding paycheck, and asserts that not a single paycheck in 2023 accurately reflected the hours she worked for the correct payroll period.  Id.

Connecticut law requires employers to pay all wages or salary due on a weekly or biweekly schedule.  C.G.S. section 31-71b(a)(1).  Subsection (b) provides that the end of the pay period must be no more than eight days before the regular pay day.  C.G.S. section 31-71b(b).  When an employer discharges an employee, wages must be paid in full by the next business day. C.G.S. section 31-71c(b).

She alleges that Ms. Picarro and Ms. Carr individually refused to allow for timely hour submissions, and set the standards for when Ms. Kunetz would and would not be compensated, such as client dinners and events.  Id.  Ms. Kunetz plausibly alleges, under both Federal and Connecticut law, that both defendants Ms. Picarro and Ms. Carr had operational control and set the hours and paid wages for Ms. Kunetz.

Accordingly, the Motion to Dismiss Count Five is denied.

## V. CONCLUSION

For the reasons stated above, the court grants the Motion to Dismiss (Doc. No. 14) as to Counts Three and Four as to the individual defendants Ms. Picarro and Ms. Carr. The court denies the Motion to Dismiss for Counts One, Two, and Five.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of November 2025.

       /s/ Janet C. Hall
      Janet C. Hall
      United States District Judge